Adam H. Braun, Esq.  [CASBN 199544]
BRAUN & BRAUN LLP
10250 Constellation Boulevard, Suite 1020
Los Angeles, California 90067
Telephone:  (310) 277-4777
Facsimile:   (310) 507-0232
Email:  adam@braunlaw.com

Attorneys for Plaintiff
JEFFREY PARCELL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY PARCELL, an individual,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF PASADENA, a local public entity, PASADENA POLICE DEPARMENT, PASADENA POLICE DETECTIVE ANDREA DELEON, et al.,<br><br>        Defendants. | Case No.  CV 17-1786<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) UNREASONABLE SEARCH (42 U.S.C. §1983);**<br>**(2) UNREASONABLE SEARCH (Cal. Civ. Code §52.1);**<br>**(3) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>**(4) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>**(5) FALSE IMPRISONMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jeffrey Parcell alleges as follows**:**

## <u>JURISDICTION AND VENUE</u>

1.      This case arises under 42 U.S.C. § 1983 and California law. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

2.      Pursuant to Government Code §§ 900 et seq., Mr. Parcell timely filed his claim with the City of Pasadena on September 1, 2016 as the conduct continued until at least April 5, 2016 if not through the present as described below in Paragraph 44.  The City



of Pasadena rejected his claim one week later, on September 8, 2016.  Pursuant to Government Code § 945.6, Mr. Parcell is now filing this claim with this Court.

3.    Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(1) and (2), because Defendants reside in the District and substantial acts and omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

4.    Plaintiff Jeffrey Parcell (hereinafter "Plaintiff" or "Mr. Parcell") brings this action in his individual capacity.  He was at all relevant times a resident of the County of Los Angeles and a citizen of the State of California and the United States of America.  He timely filed his claim with the City of Pasadena.  Because he had prior criminal troubles, he was an easy target when Pasadena Police attempted to frame him for a burglary he did not commit.

5.    Defendant City of Pasadena is a municipal corporation organized and existing under the laws of the State of California.  Defendant City of Pasadena is, and was at all relevant times mentioned herein, responsible for the actions and/or omissions and the policies, procedures, customs, and practices of the Pasadena Police Department and its employees, agents, and officers.

6.    Defendant Pasadena Police Department is the law enforcement agency for the City of Pasadena.  Defendant Pasadena Police Department is, and was at all relevant times mentioned herein, responsible for the actions and/or omissions and the policies, procedures, customs, and practices of its employees, agents, and officers.

7.    Defendant Identification Technician Ralph Chapman (hereinafter "Chapman") is and was employed by Defendant City of Pasadena, and the Pasadena Police Department.  Based on information and belief, Defendant Chapman participated in a conspiracy to alter evidence to implicate Plaintiff in a crime that he did not commit.

8.    Defendant Detective Andrea DeLeon, of the Pasadena Police Department, is employed by Defendant City of Pasadena and the Pasadena Police Department.  Based on

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

2.

information and belief, Defendant Detective DeLeon participated in fabricating evidence in an attempt to implicate Plaintiff in a crime that he did not commit.

9. Defendant Officer Joaquin Gurrola, of the Pasadena Police Department, is employed by Defendant City of Pasadena and the Pasadena Police Department. Officer Gurrola personally performed an unreasonable search by swabbing the inside of Plaintiff's cheek for DNA. He also participated in unlawfully detaining Plaintiff outside his home.

10. Defendant Sergeant Chris Kirby, of the Pasadena Police Department, is employed by Defendant City of Pasadena and the Pasadena Police Department. Based on information and belief, Defendant Sergeant Kirby personally participated in the unreasonable search of Plaintiff and participated in the unlawful detention of Plaintiff outside his home.

11. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues such Defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said Defendants when they have been identified. On information and belief, Plaintiff alleges that each and every one of DOES 1 through 20, inclusive, are responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by said Defendants. At all times mentioned herein, each of the Defendants was the agent or employee of each of the other Defendants, or an independent contractor, and in doing the things herein alleged, each of the Defendants was acting within the purpose and scope of said agency and/or employment and with the permission and consent of each of the other Defendants.

## NATURE OF THE CASE

12. This is a tort action for damages suffered by Plaintiff because of Defendants' unreasonable search of his body, illegal arrest of his person, and fabrication of evidence implicating Plaintiff in a crime that he did not commit.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

3.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

## **FACTUAL ALLEGATIONS**

13.     On December 29, 2012, a home in Pasadena belonging to Travis Dunn and his wife (hereinafter "the Dunn home") was burglarized while its owners were out of town. Mr. and Mrs. Dunn (the "Dunns") returned home the next day and upon discovering their home had been burglarized, immediately called the police.

14.     Sometime after 5:59 p.m. on December 30, 2012, Pasadena Police Department Identification Technician Ralph Chapman arrived at the home. He dusted for prints, took photographs, interviewed the victims, and departed by 6:46 p.m.  At 6:46 p.m., ID Tech Chapman reported via police radio a "10-98" (or code for assignment complete). By 6:48p.m., Chapman reported being at a different location. (See Ex. 1: Chart of Dispatch Log).

15.     Some hours later, the homeowners (the Dunns) apparently reported the discovery of a used cigarette in their home.  Pasadena Police Identification Technician Fish (hereinafter "Fish") was dispatched to the scene and arrived at 11:38 p.m. that evening (December 30, 2012).  Fish completed both a "Police Property & Evidence Report" (sometimes called a "Booked Evidence Report") and a "Physical Evidence Report" listing the cigarette and the swab taken from the cigarette as physical evidence Items 1 and 2. (See Ex. 2, formerly Ex. 12, at pg. 1 and 2).[1] There is no further evidentiary trail for the cigarette after it was properly booked into evidence on December 30, 2012 by ID Tech Fish, and the "disappearance" of this cigarette becomes central to how the Defendants fabricated evidence in this case in an attempt to implicate Plaintiff in the Dunn burglary.

---

[1] Many of the Exhibits attached to this Complaint were admitted as exhibits in the state court criminal prosecution of Plaintiff for the Dunn burglary.  When used in reference to an Exhibit to the Complaint, the description "formerly Ex." refers to the exhibit number that was previously assigned to that exhibit in the state court proceeding.

4.

16. Neither ID Tech Fish's Police Property & Evidence Report ("Booking Report") dated December 30, 2012 which was handwritten (Ex. 2 at pg. 2) nor his Physical Evidence Report dated December 30, 2012 which was typed (Ex. 2 at pg. 1) listed lab receipt numbers for the cigarette and swab (from the cigarette), as these lab receipt number had not yet been assigned at the time Fish created these reports at, or shortly after leaving, the crime scene. (Ex. 2 at pg. 1 and 2).

17. On January 7, 2013, two lab receipts were created with lab numbers K431979 and K431980. As of January 7, 2013, the only two items of physical evidence as of January 7, 2013, were the cigarette and the swab taken from the cigarette, the discovery of which is described above. The receipt identifies K431980 as the swab recovered from the used cigarette. At that time, K431979 appears to have been assigned to the cigarette because it is the preceding lab number, the cigarette would have received a lab number, and the cigarette and swab were the only two items of physical evidence at that time.

18. On January 10, 2013, Pasadena police determined that during the time of the burglary, a phone call had been placed from the Dunns' home phone to the cellular phone of a man named Hector Jimenez. (See Ex. 3 (formerly Ex. 4) at pg. 1, police report listing Jimenez's cell phone number; see also Ex. 3 at pg. 2 (formerly Ex. 11, Item 7), police report listing the number called from the Dunn home phone). The existence of the call from the Dunns' home phone to Jimenez's cellular phone was inexplicably not further investigated by Pasadena police despite its obvious significance. Based upon information and belief, it appears Mr. Jimenez committed the burglary of the Dunn residence and after misplacing his cellular phone during the Dunn burglary, placed a call to his cellular phone using the Dunns' home phone in order to locate his phone and avoid leaving it behind at the crime scene.

19. On February 8, 2013, Pasadena Detective Andrea DeLeon received a DVD that showed recorded surveillance footage from December 29, 2012 (the day of the Dunn burglary) depicting the same Hector Jimenez at a store using a credit card belonging to the Dunns that had been stolen from their home during the burglary. Detective DeLeon then

5.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

listed this DVD as Item 3 (i.e. the third item of physical evidence) in her continuation report. (See Ex. 4., formerly Ex. 13).  As described above in Paragraph 15, ID Tech Fish had already listed Items 1 and 2 as the cigarette and the swab from the cigarette in both his Pasadena Police Property & Evidence Report (sometimes called a "Booked Evidence Report") and his Physical Evidence Report dated December 30, 2012.  If the "blood" swab used by Defendants to frame Plaintiff had truly been recovered from the crime scene as later claimed, this "blood" swab would have been listed as Item 3 of physical evidence and therefore, the surveillance video recovered five weeks later (on February 8, 2013) would have been listed as Item 4, not Item 3, as it was.

20.     On June 4, 2013, Pasadena Police interviewed Mr. Hector Jimenez during his regularly scheduled parole check-in.  Officer Gurrola's report of that interview indicates that police inexplicably did not ask him about the burglary. (See Ex. 5, formerly Ex. 9).  Based on information and belief, it appears that Jimenez made a deal with police during that interview in which the police would not arrest or prosecute Jimenez for the Dunn burglary in exchange for Jimenez identifying the person responsible for the Dunn burglary.  In that context, Jimenez attempted to avoid prosecution for his crimes by falsely pinning responsibility for the burglary on Jeffrey Parcell.

21.     Although he did not commit the Dunn burglary, Plaintiff has had prior legal troubles and has been convicted of residential burglary.  Plaintiff's past was well known to both Mr. Jimenez and the Pasadena Police Department.  As such, Plaintiff was an easy target upon which Mr. Jimenez, and later the Pasadena Police Department, could pin responsibility for the Dunn burglary.  In addition, given his past, Defendants assumed Plaintiff would not be believed if he were to assert his innocence and therefore, would not be able to defend himself against Defendants' attempt to salvage their prosecution of Plaintiff by fabricating evidence that would appear to corroborate Mr. Jimenez's false accusation against Plaintiff.

22.     On information and belief, Detective DeLeon and others with the Pasadena Police Department thereafter obtained a swab of DNA (likely from Plaintiff's car based on

6.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

the reasons described below in Paragraph 23) and fraudulently assigned it Lab Number K431979 (the number that would have been assigned to the used cigarette that supposedly went "missing") to make it appear as if this swab (likely from Plaintiff's car) was instead "blood" that belonged to the burglar and had been recovered from the crime scene on December 30, 2012.

23.     On June 21, 2013, investigators sent two physical evidence items to the Los Angeles Sherriff's Department Forensic Biology lab for analysis.  The receipt associated with that laboratory submission lists two items – one was a buccal swab taken from Hector Jimenez during his parole check-in described above in Paragraph 20 and the other was a DNA swab supposedly of "blood" listing a Lab ID Number K431979, the same number that would have been previously assigned to the cigarette found at the Dunn home on December 30, 2012.  (See Ex. 6).  Investigators claim the buccal swab listed with Lab ID Number K431979 was of "blood" recovered from the Dunn home.  The receipt for the laboratory submission, however, explicitly states in the "Case Notes Section" that that Lab ID No. K431979 was actually recovered from the "interior of a vehicle," not the Dunn home.[2] (See Ex. 6 (emphasis added)). The acquired date for that particular swab was also tellingly listed as "January 7, 2013," not December 30, 2012 when physical evidence was recovered from the crime scene.

24.     Unlike with the recovery of the used cigarette and swab of the cigarette (See Paragraph 15 and Ex. 2 at pg. 2), neither ID Tech Fish nor ID Tech Chapman ever prepared a "Pasadena Police Property & Evidence Report" (or "Booking Report") for any supposed "blood" evidence recovered from the Dunn residence.  They would have been required to do so when recovering this "blood" evidence so that it would be properly

_____

[2] As reflected in Ex 6., the "Case Notes" specifically state: "BS [Buccal swab] from interior of vehicle. Compare to S/ ref." Ex. 6, LA County Sherriff's Department Forensic Biology Section, Pg. 132.  It appears that one of the Defendants accidentally provided accurate information about where Plaintiff's DNA was acquired from when he or she was submitting that swab to the lab.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

7.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY

booked and to ensure it was assigned a lab number. The only available "Booking Report" reflects recovery of the cigarette and the swab from the cigarette. (Ex. 2, at pg. 2).

25. During discovery in the criminal prosecution of Plaintiff, the Los Angeles District Attorney's Office later produced, likely unwittingly, what appears to be a fabricated "Physical Evidence Report" (not a "Booking Report") purportedly authored by ID Tech Chapman in which the Pasadena Police Department and certain of the Defendants attempt to fabricate a paper trail for the supposed recovery of Plaintiff's blood from the crime scene. This fabricated report is type-written and lists physical evidence "Item 1" as a purported DNA swab of blood. (See Ex. 7). Chapman's supposed Physical Evidence Report, which claims to be dated December 30, 2012, lists next to "Item 1" not just a description of the supposed buccal swab but most tellingly a typed lab receipt number even though no lab receipt number would have been assigned at that point. (E.g., compare Ex. 2 at pg. 1 (report for recovery of cigarette and swab of cigarette from the crime scene which does *not* list lab receipt numbers because they would not have been assigned by December 30, 2012 with Ex. 7, a fabricated report purportedly from that same day with a typed lab receipt number even though it would not have been assigned yet). In fact, lab receipt numbers would not be generated until January 7, 2013, nearly eight days after police processing of the Dunn crime scene. These circumstances indicate this particular report (Ex. 7) was prepared by the Pasadena Police Department and some of the other Defendants at a later date (at least after January 7, 2013 but likely many months later) and fraudulently backdated to make it appear to be a contemporaneous record related to the recovery of evidence from the Dunn crime scene on December 30, 2012. ID Tech Chapman apparently forgot that a lab receipt number would not have been available on December 30, 2012. In making that mistake and as part of the plan to fabricate evidence against Plaintiff, Defendants attempted to reuse K431979 (the number previously assigned to the used cigarette) for the DNA swab taken from the "inside" of Plaintiff's "vehicle" and to pass off this DNA swab as "blood" obtained from inside the Dunn home. To cover up their fraudulent substitution, some or all of the Defendants then claimed the cigarette was

8.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

"missing" because if it were not missing there would be two pieces of physical evidence with the same lab receipt number (the cigarette and the fabricated DNA evidence) and their scheme easily uncovered.

26.    Officer Brown was among the officers dispatched to the Dunn residence.  In the last paragraph of his report he indicates that he collected a blood sample, which he had not seen on the back door until ID Tech Chapman pointed it out to him.  This sentence appears on the second page of Officer Brown's report, which is unsigned, unlike the first page of the report which bears the signature of a supervisor. It appears the second page of the report referencing the blood sample was added at the end of the report at a later date (Ex. 8, formerly Ex. 10).

27.    ID Tech Chapman's report on the Bode Crime Scene Questionnaire claims that there was not enough blood for a presumptive test with respect to the fabricated "blood" evidence (Ex. 9).  In order for a sample to be too small for a presumptive test, the blood stain would have to be smaller than one part per million.  As depicted in the alleged photographs however, the blood stain is more than sufficient in size to run a presumptive test (Ex. 10).  Because it is standard procedure to identify the type of DNA (e.g., hair, skin, saliva, blood, etc.) at the time it is collected, a presumptive test was required. In addition to the photographs, the large size of the allele peeks later allegedly generated from this supposedly minute blood sample indicate that a presumptive test would most certainly have been obtainable. A presumptive test would have confirmed the swab taken from Plaintiff's car was saliva, hair, skin, or some other form of DNA other than blood, which is why the Defendants needed to falsely claim they could not perform a presumptive test on it.

28.    ID Tech Chapman's photo album from his investigation at the Dunn home contains twenty-eight (28) supposed crime scene photographs.  Six photographs show a moist, bright red smear on a door that was exposed to night and day temperatures for at least 24 hours by the time it would have been processed by police. More specifically, the burglary must have occurred sometime between the time the Dunns left their home and

9.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

when the call was placed form the Dunn home to Hector Jimenez's cell phone at 4:24 p.m. on December 29, 2012. Chapman did not take his pictures of the crime scene until after 6:00 p.m. on December 30, 2012, or more than 24 hours later. Blood oxidizes when exposed to oxygen in the air and turns a shade of dark, reddish brown. Any blood exposed to air for 24 hours would have been dark brown by the time it was supposedly photographed, while the blood in the supposed photographs appears to be a moist, bright red smear. (See Ex. 10).

29. The pattern of photographs made available in criminal discovery and the photographs missing which logically would have been taken together indicate the photographs allegedly depicting the blood were inserted by the conspirators at a later date in place of removed photographs in an attempt to create the impression of a photographic trail for the fabricated evidence. Other discrepancies also indicate the photographs were altered to try to support this fabricated claim that Plaintiff's blood was found in the Dunn home. For example, there are supposedly no photographs of the back gate (the burglar's initial point of entry) which almost certainly would have been taken. There are supposedly no photographs of a closet by the front door from which six items were taken, yet there are pictures of the other closets in the home from which items were taken. There are no pictures of a small dish just inside the door from which items were taken. The victims reported a possible blood stain on a broken glass pane yet there are no pictures of that possible blood stain. Furthermore, the victims reported a possible blood stain on the door itself as being around the height of the door handle. However, the stain depicted in the six supposed crime scene photographs in the Pasadena Police photo album reflect a supposed blood stain at about eye level, not the level of a door handle. In sum, it appears six photographs of the initial entry point and other critical locations (a broken window pain, a closet from which items were stolen, etc.) were removed and in their place, six fabricated photographs of a moist, red substance were inserted.

30. In addition, a forensic review of the digital characteristics of these photographs reveal their suspect nature. Defense counsel in Mr. Parcell's criminal case

10.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

retained Stutchman Forensic Laboratory which specializes in the examination of audio, video, and photographic evidence. (See Ex.11, formerly Exhibit 24). Stutchman examined all the photographs in ID Tech Fish's and ID Tech Chapman's photo album. Part of that analysis included running the photographs through an analysis program which concluded that the photographs showed "numerous different created dates, modified dates and times within the same report, which did not match one another." (Id.) Stutchman Forensic Laboratory notes that "Photographs 6 through 32 all generated an XMP report. Within this area of the report, it shows that Adobe Software was used as well as Microsoft Photo Viewer." In sum, Stutchman concluded with "a reasonable degree of scientific certainty that this [photographic] file has been altered and/or edited."

31. The digital timestamps for the supposed photographs of the blood smear were likely edited as well. The digital timestamps list times between 6:48 p.m. and 7:03 p.m.,[3] even though Chapman reported a "10-98" (or code for assignment complete) at 6:46 p.m. that evening and then reported being at a different location by 6:48 p.m. when these photographs were supposedly taken, as discussed above in Paragraph 14. (Ex. 1).

32. These photographs were not turned over to the defense in Mr. Parcell's criminal case until at least December 2014, more than two years after the burglary and only after numerous attempts by criminal counsel over the span of a year to force their disclosure.

33. Based upon information and belief, it appears ID Tech Chapman returned to the Dunn home at a later date to take photographs of the door, which by that point would not have had blood on it, even if perhaps it once did. Chapman, DeLeon, and other unknown conspirators needed photographic evidence to back up their use of biological

[3]See Ex. 12. It should be noted that the camera had not been adjusted for daylights savings so all photographs were tagged as an hour ahead of their true time. Therefore, photographs with timestamps listing 1900 hours were actually taken at 1800 hours and those listing 2000 hours were actually taken at 1900 hours.

11.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY

material taken from Plaintiff's vehicle on a subsequent date, which they masqueraded as "blood" evidence from the Dunn crime scene. It appears Chapman and other conspirators used Adobe Photoshop to create a bright red smear on the photographs of the door. This would explain why an expert examination of the photographs revealed that Adobe Photoshop had been used on the photographs and the fact that the "blood" would appear red and moist despite being exposed to air and the elements for more than 24 hours by the time police processed the crime scene.

34. On October 6, 2013, the Forensic Biology Lab returned a "hit" on Lab No. K431979, the sample that Detective DeLeon had sent in claiming it was blood obtained from the Dunn home when it was in reality hair, saliva, skin, or some other biological material taken from Plaintiff's car. As Pasadena Police knew, K431979 would match with a known DNA profile for Plaintiff, from his prior criminal case, because Pasadena police acquired this DNA from the interior of his car (See Ex. 13).

35. On November 22, 2013, Plaintiff was ill and lying in bed when his father called Plaintiff's cellular phone and told him to come outside. Waiting for Plaintiff outside his home were eight armed police officers from a multi-agency unit funded by the State of California.

36. These armed police officers had no search warrant and no arrest warrant.

37. These officers had instructed Plaintiff's father to call his son and tell him to come outside. Although police used an audio-recorder at Plaintiff's home, significant portions of their interactions with Plaintiff, including what they said to him, were not recorded. (Ex. 14, Transcript of Preliminary Hearing in *People v. Parcell*, pg. 227-228). Sergeant Kirby claimed in testimony that he stopped recording these portions of their interactions with Plaintiff to preserve the battery and memory of his recorder. *Id.*

38. When Mr. Parcell stepped outside of his home, he was immediately placed in handcuffs and escorted down his driveway.

39. Mr. Parcell wanted to minimize the length of his detention and agreed to allow the police to search his bedroom. After Mr. Parcell signed a consent form allowing

12.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

Pasadena police to search his bedroom, he was then informed that he was under arrest and told that the police needed a swab from his mouth for DNA analysis.  He was told if he refused to give a DNA swab, police would get a court order and do it anyway.

40.    Mr. Parcell complied, and Pasadena Police took a DNA swab. He was then transported to the Pasadena Police Station.  He was interviewed and asked whether or not he knew a woman named Jacquelyn Vallejos (whose DNA was found in the swab from the used cigarette recovered at the Dunn home and was later learned to be Hector Jimenez's girlfriend).  Mr. Parcell indicated he did not know anyone by that name.  Police asked Mr. Parcell about the Dunn burglary, and he indicated that he did not commit that burglary.  Mr. Parcell was then taken to Huntington Memorial Hospital because of his illness.  He was released from Huntington Memorial Hospital after a few hours of observation and treatment. He was then transported to Pasadena City Jail and then transferred to Los Angeles County Jail.

41.    Mr. Parcell posted bail on November 25, 2013 and was released from custody.

42.    On March 18, 2014, approximately four months later, Mr. Parcell appeared for a scheduled hearing on a motion for the return of his property.  The Pasadena police were present and waited for the hearing to conclude to arrest Mr. Parcell again for the same Dunn burglary for which he was arrested on November 23, 2013.

43.    At the time of his bail hearing on or about March 20, 2014, Defendant Detective DeLeon deliberately misinformed the criminal court that there were other burglary charges pending against Mr. Parcell in order to have Plaintiff's bail raised to $200,000.  Mr. Parcell made bail and the court later indicated that absent Detective DeLeon's misrepresentations, Mr. Parcell's bail would have been set at $90,000.  As a result, Defendant DeLeon caused Plaintiff to unnecessarily spend $11,000 in fees to a bondsman.

44.    Those criminal charges against Mr. Parcell for the Dunn burglary were not dropped until April 5, 2016, over two years after his second arrest for the Dunn burglary.

13.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

COMPLAINT FOR DAMAGES; DEMAND FOR JURY

Mr. Parcell's rights continued to be violated until these charges against him were dropped, and he continued to experience anxiety and harm until these charges were dropped. In February 2017, the Pasadena Police apparently secured the re-filing of charges against Plaintiff for the Dunn burglary with the hope of forestalling this impending lawsuit which it knew to be only weeks away given the September 8, 2016 denial of Plaintiff's claim filed with the City of Pasadena, as referenced in Paragraph 2 above. Therefore, Plaintiff's rights continue to be violated through the present by all Defendants and will continue to be violated until these charges are again dismissed.

## FIRST CAUSE OF ACTION

### (For Unreasonable Search and Seizure (42 U.S.C. §1983) against All Defendants)

45. The allegations above are realleged and incorporated by reference, except where to do so would be inconsistent with pleading this cause of action.

**Unreasonable Search of Mr. Parcell's Home And Seizure of His Property**

46. On information and belief, agents and employees of the Pasadena Police Department acting under color of law entered and searched Mr. Parcell's residence.

47. Mr. Parcell was present at his residence during the search and had a reasonable expectation of privacy.

48. Defendants conducted the search without probable cause to believe Mr. Parcell had committed a crime or that they would find evidence of a crime in his home. Defendants had fabricated evidence to try to implicate Plaintiff in a burglary he did not commit and because of such fabrication, probable cause did not exist.

49. Even if the "blood smear" was Plaintiff's biological material and actually came from the crime scene (neither of which is true), there were no exigent circumstances that would permit a search of Plaintiff's home without a search warrant more than eleven months after the Dunn burglary. Plaintiff was home, sick, and in bed. Police had no evidence that he would flee or that he would commit other crimes, or that eleven months

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

14.

later, any evidence would be destroyed, discarded, or spoiled while the police obtained a warrant.

50.     Mr. Parcell's consent to have his home searched was not voluntary.  While sick and in bed, Mr. Parcell was roused from his home by a call from his father who had been ordered to do so by police. When Mr. Parcell came outside he was surrounded by eight armed police officers who had set up a perimeter around his home.  Mr. Parcell was immediately arrested and placed in handcuffs.  He gave his consent to a search of his home while he was under arrest, in handcuffs, and surrounded by eight armed police officers. Under these circumstances, his consent cannot be said to have been given voluntarily.

51.     Defendants acted maliciously and with wanton disregard of Mr. Parcell's rights.

52.     Defendants conspired to violate Mr. Parcell's rights under the Fourth Amendment by acting in concert to fabricate evidence implicating Mr. Parcell and by searching his home without bone fide evidence implicating him.

53.     As a result of Defendants' unlawful conduct, Mr. Parcell suffered great humiliation, embarrassment, and mental, emotional, and psychological harm.

**Unreasonable Search of Mr. Parcell's Mouth And Seizure of His DNA with a Swab**

54.     The allegations above are realleged and incorporated by reference, except where to do so would be inconsistent with pleading this cause of action.

55.     On information and belief, agents and employees of the Pasadena Police Department acting under color of law searched Mr. Parcell's mouth and seized his DNA.

56.     Mr. Parcell had a reasonable expectation of privacy in his mouth and in his DNA.

57.     Defendants conducted the search without probable cause to believe Mr. Parcell had committed a crime or that his DNA was actually linked with any other evidence.  Defendants had fabricated evidence to try to implicate Plaintiff in a burglary he did not commit and because of such fabrication, probable cause did not exist.

15.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

58.   Even if the "blood smear" was Plaintiff's biological material and actually came from the crime scene (neither of which is true), there were no exigent circumstances that would permit a search of Plaintiff's mouth without a warrant more than eleven months after the Dunn burglary.  Plaintiff was home, sick, and in bed.  Police had no evidence that he would flee or that he would commit other crimes, or that his DNA would become unavailable to police if they obtained a warrant.

59.   Mr. Parcell's consent to have his mouth searched and his DNA seized was not voluntary.  While sick and in bed, Mr. Parcell was roused from his home by a call from his father who had been ordered to do so by police. When Mr. Parcell came outside he was surrounded by eight armed police officers who had set up a perimeter around his home.  Mr. Parcell was immediately arrested and placed in handcuffs.  Police then told Mr. Parcell that they needed a swab from his mouth for DNA analysis and if he refused, police would get a court order and do it anyway. Under these circumstances, his consent cannot be said to have been given voluntarily.

60.   Defendants conspired to violate Mr. Parcell's rights under the Fourth Amendment by acting in concert to fabricate evidence implicating Mr. Parcell and by searching his mouth and DNA without bone fide evidence implicating him.

61.   As a result of Defendants' unlawful conduct, Mr. Parcell suffered great humiliation, embarrassment, and mental, emotional, and psychological harm.

**Unreasonable Seizure Search and Seizure of Defendant in his Second Arrest**

62.   On March 18, 2014, Mr. Parcell attended a scheduled hearing on the return of his property, illegally taken from him in the course of his November 22, 2013 arrest. Pasadena Police were waiting for him at the courthouse and arrested him again for the burglary of the Dunn home

63.   Mr. Parcell remained in custody for approximately one week following this second illegal seizure of his person.

64.   Defendants acted maliciously and with wanton disregard of Mr. Parcell's rights.

16.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY

65. As a result of Defendants' unlawful conduct, Mr. Parcell suffered great humiliation, embarrassment, and mental, emotional, and psychological harm.

## SECOND CAUSE OF ACTION

### (For Unreasonable Search and Seizure (Cal. Civ. Code §52.1) Against All Defs.)

66. The allegations above are realleged and incorporated by reference, except where to do so would be inconsistent with pleading this cause of action.

**Unreasonable Search of Mr. Parcell's Home And Seizure of His Property**

67. On information and belief, agents and employees of the Pasadena Police Department acting under color of law entered and searched Mr. Parcell's residence.

68. Mr. Parcell was present at his residence during the search and had a reasonable expectation of privacy.

69. Defendants conducted the search without probable cause to believe Mr. Parcell had committed a crime or that they would find evidence of a crime in his home. Defendants had fabricated evidence to try to implicate Plaintiff in a burglary he did not commit and because of such fabrication, probable cause did not exist.

70. Even if the "blood smear" was Plaintiff's biological material and actually came from the crime scene (neither of which is true), there were no exigent circumstances that would permit a search of Plaintiff's home without a search warrant more than eleven months after the Dunn burglary. Plaintiff was home, sick, and in bed. Police had no evidence that he would flee or that he would commit other crimes, or that eleven months later, any evidence would be destroyed, discarded, or spoiled while the police obtained a warrant.

71. Mr. Parcell's consent to have his home searched was not voluntary. While sick and in bed, Mr. Parcell was roused from his home by a call from his father who had been ordered to do so by police. When Mr. Parcell came outside he was surrounded by eight armed police officers who had set up a perimeter around his home. Mr. Parcell was immediately arrested and placed in handcuffs. He gave his consent to a search of his home

17.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

while he was under arrest, in handcuffs, and surrounded by eight armed police officers. Under these circumstances, his consent cannot be said to have been given voluntarily.

72. Defendants acted maliciously and with wanton disregard of Mr. Parcell's rights.

73. Defendants conspired to violate Mr. Parcells rights under the Fourth Amendment by acting in concert to fabricate evidence implicating Mr. Parcell and searching his home without bone fide evidence implicating him.

74. As a result of Defendants' unlawful conduct, Mr. Parcell suffered great humiliation, embarrassment, and mental, emotional, and psychological harm.

**Search of Mr. Parcell's Mouth And His DNA with a Swab**

75. The allegations above are realleged and incorporated by reference, except where to do so would be inconsistent with pleading this cause of action.

76. On information and belief, agents and employees of the Pasadena Police Department acting under color of law searched Mr. Parcell's mouth and seized his DNA.

77. Mr. Parcell had a reasonable expectation of privacy in his mouth and in his DNA.

78. Defendants conducted the search without probable cause to believe Mr. Parcell had committed a crime or that they would find his DNA was actually linked with any other evidence. Defendants had fabricated evidence to try to implicate Plaintiff in a burglary he did not commit and because of such fabrication, probable cause did not exist.

79. Even if the "blood smear" was Plaintiff's biological material and actually came from the crime scene (neither of which is true), there were no exigent circumstances that would permit a search of Plaintiff's mouth without a warrant more than eleven months after the Dunn burglary. Plaintiff was home, sick, and in bed. Police had no evidence that he would flee or that he would commit other crimes, or that his DNA would become unavailable to police if they obtained a warrant.

80. Mr. Parcell's consent to have his mouth searched and his DNA seized was not voluntary. While sick and in bed, Mr. Parcell was roused from his home by a call from

18.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

his father who had been ordered to do so by police. When Mr. Parcell came outside he was surrounded by eight armed police officers who had set up a perimeter around his home. Mr. Parcell was immediately arrested and placed in handcuffs.  Police then told Mr. Parcell that they needed a swab from his mouth for DNA analysis and if he refused, police would get a court order and do it anyway. Under these circumstances, his consent cannot be said to have been given voluntarily.

81.     Defendants conspired to violate Mr. Parcells rights under the Fourth Amendment by acting in concert to fabricate evidence implicating Mr. Parcell and by searching his mouth and seizing his DNA without bone fide evidence implicating him.

82.     As a result of Defendants' unlawful conduct, Mr. Parcell suffered great humiliation, embarrassment, and mental, emotional, and psychological harm.

**Unreasonable Seizure Search and Seizure of Defendant in his Second Arrest**

83.     On March 18, 2014, Mr. Parcell attended a scheduled hearing for the return of his property, illegally taken from him in the course of his November 22, 2013 arrest. Pasadena Police were waiting for him at the courthouse, and as soon as the hearing was over they arrested Mr. Parcell again for the burglary off the Dunn home.

84.     Mr. Parcell remained in custody for approximately one week following this second illegal seizure of his person.

85.     Defendants acted maliciously and with wanton disregard of Mr. Parcell's rights.

86.     As a result of Defendants' unlawful conduct, Mr. Parcell suffered great humiliation, embarrassment, and mental, emotional, and psychological harm.

**THIRD CAUSE OF ACTION**

**(For Intentional Infliction of Emotional Distress Against All Defendants)**

87.     The allegations above are realleged and incorporated by reference, except where to do so would be inconsistent with pleading this cause of action.

19.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

88. Defendants' fabrication and altering of evidence to implicate Mr. Parcell in a crime he did not commit was outrageous conduct.

89. Defendants were reckless as to Mr. Parcell's well-being when they framed him for a crime that he did not commit.

90. Mr. Parcell suffered extreme emotional distress while his home was searched, his mouth probed, and his freedom restrained when he was arrested twice for a crime that he did not commit. He suffered further extreme stress and emotional trauma as he anticipated prosecution for a serious felony that he did not commit and for which agents of the Pasadena Police Department framed him.

91. Defendants' fabrication and altering of evidence caused Mr. Parcell to suffer emotional stress and trauma during the two times he was arrested for the burglary and while he awaited prosecution.

92. Mr. Parcell suffered emotional distress because of ID Tech Chapman and Detective DeLeon's fabrications in a monetary amount to be determined at trial.

93. Mr. Parcell continued to experience emotional distress at least until the fabricated charges against him were dropped on April 5, 2016. In addition, the Pasadena Police secured in February 2017 the re-filing of charges against Plaintiff for a crime he did not commit so the emotional distress is ongoing.

## FOURTH CAUSE OF ACTION

### (For Negligent Infliction of Emotional Distress Against All Defendants)

94. The allegations above are realleged and incorporated by reference, except where to do so would be inconsistent with pleading this cause of action.

95. Defendants owed Mr. Parcell a duty not to cause him emotional distress and not to fabricate evidence framing him for a crime that he did not commit.

96. Defendants breached this duty when they orchestrated taking a DNA sample from Mr. Parcell's car and switching it with a cigarette recovered from the Dunn burglary. They further breached this duty by altering photographs of the crime scene to corroborate

20.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

their false claim that this DNA sample taken from Parcell's car was supposedly blood found on a door at the Dunn home.

97.    Defendants caused Mr. Parcell serious emotional distress by framing him for a crime he did not commit and Defendants' negligence was a substantial factor in causing Mr. Parcell's serious emotional distress.

98.    Mr. Parcell suffered serious emotional distress when he was arrested twice for a crime that he did not commit and while he awaited prosecution for a serious felony.

99.    Mr. Parcell continued to suffer emotional distress until the fabricated charges against him were dropped on April 5, 2016.  In addition, the Pasadena Police secured in February 2017 the re-filing of charges against Plaintiff for a crime he did not commit so the emotional distress is ongoing.

## FIFTH CAUSE OF ACTION

### (For False Imprisonment Against All Defendants)

100.    The allegations above are realleged and incorporated by reference, except where to do so would be inconsistent with pleading this cause of action.

101.    Mr. Parcell did not consent to being arrested outside his home and having his freedom restrained.

102.    Because Defendants fabricated evidence and framed Mr. Parcell for a burglary that he did not commit, they did not have lawful privilege to have Mr. Parcell arrested.

103.    Because of the actions of Defendants, Mr. Parcell was imprisoned for three days in November 2013 following his first arrest for the Dunn burglary and over a week in March 2014 following his second arrest for the Dunn burglary.

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

21.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY

## **DEMAND FOR RELIEF**

### **(Against All Defendants)**

Plaintiff Jeffrey Parcell demands judgment against Defendants as follows:

1.      For general damages of at least $3,000,000, to be proven at trial;

2.      For punitive damages against all individual defendants of at least $3,000,000, to be proven at trial;

3.      For attorneys' fees and costs of this action to the maximum extent permitted by law (including but not limited to 42 U.S.C. § 1983 and Cal. Civ. Code §52.1); and

4.      For such other relief as the Court may deem just and proper.

Dated:      March 6, 2017                          BRAUN & BRAUN LLP

                                                      By:   */s/ Adam H. Braun*

                                                            Adam H. Braun

                                                            Attorneys for Plaintiff
                                                            JEFFREY PARCELL

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

22.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY

## DEMAND FOR JURY TRIAL

Plaintiff Jeffrey Parcell hereby demands a trial by jury on all issues so triable.


Dated:     March 6, 2017                    BRAUN & BRAUN LLP


                                     By:    */s/ Adam H. Braun*

                                            Adam H. Braun

                                            Attorneys for Plaintiff
                                            JEFFREY PARCELL

BRAUN & BRAUN LLP
10250 CONSTELLATION BOULEVARD, SUITE 1020
LOS ANGELES, CALIFORNIA 90067

23.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY